Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6799 | **DATE** | 8/15/2001 |
| **CASE TITLE** | The Lockformer Company v. PPG Industries, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Lockformer's Motion for Summary Judgment and PPG's Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, the Defendants' Motion to Dismiss [# 102] is GRANTED and the Plaintiff's Motion for Summary Judgment [#95] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 20 2001 date docketed | 141 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 AUG 17 PM 6: 04 | date mailed notice | |
| mrl | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| **The Lockformer Company,** | |
| Plaintiff, | |
| v. | |
| **PPG Industries, Inc. and PPG Industries Ohio, Inc.,** | No. 99 C 6799 |
| Defendants, | The Hon. David H. Coar |
| **PPG Industries, Inc. and PPG Industries Ohio, Inc.,** | |
| Cross-claim Plaintiffs, | **DOCKETED** |
| v. | AUG 2 0 2001 |
| **Truseal Technologies, Inc.** | |
| Cross-claim Defendants. | |

## MEMORANDUM OPINION AND ORDER

This is an antitrust and patent action concerning certain players in the insulated-window industry. The windows involved are insulated by putting two or more pieces of flat glass in the same unit with spacers between the glass. Lockformer manufactures machines that make the spacers for multi-pane windows. PPG Industries, Inc. and PPG Industries Ohio, Inc. ("PPG") manufacture flat glass for the windows. PPG also owns patents on machines that make multi-pane window spacers and patents on the spacers themselves.

Prior to filing this suit, Lockformer received letters from PPG in which PPG stated its belief that Lockformer might be infringing on PPG's patent rights. Although Lockformer disputed this fact, it was unable to obtain assurances to its satisfaction that PPG would not sue them for infringement. Consequently, Lockformer sued for judgment declaring that none of their products or processes violated the PPG patents. Since this suit was filed, PPG has conceded – in letters to



Lockformer, in briefs filed with this Court, and orally in open court – that none of Lockformer's products or processes violate U.S. Patent Nos. 5,665,282 and 5,675,944.

At a Markman hearing, the parties presented evidence regarding the proper construction of the patents at issue in this case, but focused primarily on U.S. Patent No. 5,177,916. Subsequent to that hearing, PPG moved to dismiss Lockformer's declaratory judgment action as it concerned the '282 and '944 Patents. PPG says that there is no case or controversy between the parties on these patents because they have conceded that no products or processes of Lockformer's infringe either the '282 or '944 Patents. According to PPG, their concessions eliminate any controversy between the parties on those patents. By contrast, Lockformer says that PPG's concession entitles it to summary judgment with respect to those patents.

For the reasons stated below, the Court DENIES Lockformer's motion for summary judgment and GRANTS PPG's motion to dismiss as to the '282 and '944 Patents. Since Lockformer's suit with respect to the '916 Patent remains, the Court construes the disputed claims of that patent.

## PPG's Motion to Dismiss

For a federal court to have subject matter jurisdiction, there must be an "actual controversy" between "interested parties." See 28 U.S.C. § 2201(a). An actual controversy is a jurisdictional prerequisite to a federal lawsuit, see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937), and the controversy must remain alive throughout the case. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975). To decide whether an actual controversy exists, courts look at the totality of the circumstances. See Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272 (1948). In the context of patent suits for declaratory judgments, courts have used a two-part inquiry to test for the existence of an actual controversy. The first part requires some action – a specific threat or

otherwise – that creates a reasonable apprehension of an infringement suit. The second part requires activity – either present activity or intended or threatened future activity – that might be infringing. See BP Chemicals v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).

With respect to the first part, a "mere subjective apprehension" of a lawsuit is not sufficient to create an actual controversy. See Shell Oil Co. v. Amoco Corp. 970 F.2d 885, 888 (Fed. Cir. 1992). A letter threatening a suit based on certain conduct, though, has been found to be sufficient in most cases. See, e.g., EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996). Nevertheless, even where a specific threat has been made, a patent holder can eliminate it by agreeing not to sue on the patent or by declaring that specific products or processes do not infringe on the patents in question. See Super Sack Mfg. Corp v. Chase Packaging Corp., 57 F.3d 1054, 1056 (Fed. Cir. 1995). Such a concession would estop the patent holder from asserting infringement in a subsequent suit and consequently eliminates the controversy between the parties. Id.

Assuming that PPG created a reasonable apprehension of an infringement suit in its pre-litigation letters, it has eliminated any threat based on its subsequent concessions. Recently, in open court and in filings with this Court, PPG has admitted that no existing product or process that Lockformer makes or uses infringes on either the '282 or the '944 Patent. And, counsel for PPG acknowledged in response to this Court's questions that even as to unknown products or processes it was on inquiry notice of the existence of any potentially infringing products or processes. As such, PPG has eliminated any threat of future infringement suit, depriving this Court of subject matter jurisdiction. See Super Sack, 57 F.3d at 1056.

Lockformer's reliance on Fina Research, S.A. v. Bariod Ltd., 141 F.3d 1479, 1483 (Fed. Cir. 1998) to counter PPG's motion is misplaced. In that case, Fina made a drilling mud that could not, by itself, directly infringe on the patent in question. Fina, 141 F.3d at 1481. Fina could be liable

"only for inducing infringement of the ... patent" when the drilling mud that it made was combined with other ingredients. Id Although the patent holders had threatened suit before litigation, they subsequently stated that they had not and did not make any claim of infringement against Fina. But, at oral argument, counsel for the patent holders refused to promise that it would not sue Fina for inducing infringement by others who mixed Fina's mud with other ingredients. Id. at 1484.

Here, PPG acknowledges that the products or processes that Lockformer has identified do not infringe the '282 or '944 Patents. Unlike the situation in Fina, Lockformer has not identified how a third party could use its products or processes and infringe on those patents. If, as PPG has conceded, Lockformer's use does not infringe those patents, it is difficult to see how (and Lockformer has not explained to the Court how) a third party's use would make Lockformer liable for inducing infringement. It bears repeating that PPG has not merely agreed not to sue Lockformer for any currently-used methods or products under the '282 and '944 patents. Rather, PPG concedes that known products and methods do not infringe those patents. Thus, the threat of an inducement suit that was present in Fina is not present here. Since PPG has eliminated any threat of suit, the declaratory judgment suit as to the '282 and '944 Patents is dismissed.

Construction of Claim 1 of the '916 Patent

Since the '282 and '944 Patents have been eliminated from the case, this Court only needs to construe the '916 Patent. The parties have submitted evidence for construction at the Markman hearing and now this Court must determine what it is to which PPG's patent pertains. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 389 (1996). To construe the claims at issue, the Court looks to intrinsic evidence in the record, including the claim and specification language, drawings, and the prosecution history. See, e.g., Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir.1996). "[T]he actual words of the claim are the controlling focus." Id. If claim language

is not ambiguous, then the Court should not rely on extrinsic evidence to construe the claim. See, e.g., Key Pharms v. Hercon Laboratory Corp., 161 F.3d 709, 716 (Fed. Cir. 1998).

The parties agree on the meaning of most of the claim language. They disagree strongly, however, on the meaning of one particular aspect of the first claim. According to the express language of the '916 Patent, it first claims protection for:

> A strip to be shaped into spacer stock for maintaining adjacent glass sheets of an insulating unit in a predetermined spaced relationship to one another, the strip comprising:
>
>> [A] an elongated flat bendable metal substrate having opposed major surfaces, at least one of the surfaces being fluid impervious; said substrate having a structural stability sufficient to maintain adjacent glass sheets in a fixed relationship when said substrate is shaped into the spacer stock;
>>
>> [B] an elongated bead of fluid pervious adhesive adhered directly to one of said major surfaces spaced from edges of said substrate; said adhesive having structural stability less than the structural stability of said substrate;
>>
>> [C] and a desiccant in said bead.

'916 Patent, Col. 6 lns. 32-43 (brackets and lettering added).

This claim covers metal stock that will be formed into multi-pane window spacers. The metal strip must be longer than it is wide, planer, and prevent fluid from passing through it at least one of the flat sides. The strip must also be pliable enough to be shaped into spacer stock, but rigid enough to hold panes of glass apart. A bead of adhesive is stuck to one of the strip's flat surfaces. The adhesive must not simply coat the surface but be three dimensional and be longer than it is either tall or wide. The adhesive must also be set in from the edges of the strip and contain a drying agent. Finally, the adhesive must not be as rigid as the metal strip.

The parties agree on this description of Claim 1. They part company, though, on the meaning of "adhesive." Even with respect to adhesives, though, the parties agree on a great deal more than

-5-

they disagree. Both of the parties agree on the general concept of adhesives – namely, that they stick to things or they stick two non-adhesive things to each other. They also both acknowledge that there is a broad range of stickiness for adhesives. Finally, both agree that how sticky a particular substance is does not affect its characterization as an adhesive.[1]

Beyond their agreement on these general principals, though, Lockformer and PPG have different ideas about how sticky a substance must be to fall within the first claim of the '916 Patent. On the one hand, Lockformer says that the adhesive must stick to the strip for the life of the window, which is sometime between a handful and a dozen years or so. On the other hand, PPG says that it needs to stick to the strip only long enough for the strip to be shaped into a spacer and glass applied to the spacer. Unfortunately, there is little in either the intrinsic or extrinsic evidence to clarify which of these position, if either, is correct.

In light of this lack of clarity, the Court interprets Claim 1 in a manner no more limiting than its drafters provided. Consequently, the Court construes "adhesive" in Claim 1 to require that the adhesive stick to the strip through the process of shaping it into spacer stock and fixing glass to the spacer. It would be useful to have the adhesive material containing the drying agent stick to the strip through the process of forming it into a window spacer. This seems to be the minimum period that is necessary to have the adhesive be useful to the invention. Any other interpretation would limit the claim where no limits have been set.

While it is true that not-very-sticky material placed on all sides of a spacer would eventually fall into the window where it could be seen, there is nothing in Claim 1 requiring adhesive to be

---

[1] PPG submitted testimony at the Markman hearing that unless a substance stuck for more than twenty-four hours, it was not an adhesive. The Court does not credit this limited definition. As counsel for PPG acknowledged in response to one of the Court's concerns, adhesives designed for particular purposes can have specific and limited durations. It is not at all clear that twenty-four hours provides any meaningful distinction between an adhesive and a non-adhesive.

placed on the entire length of the yet-to-be-shaped strip. Conceivably, a strip could have only a portion of its length -- one quarter, for example, with a window that is perfectly square -- covered with adhesive and drying agent. Then, that strip could be formed into a spacer and the part with adhesive could form the bottom of the spacer. In such a case, no material would fall into the viewing area of the window. Such a strip would still meet the requirements of Claim 1.

Since "adhesive" in Claim 1 is not limited by any other language, and to be useful, only requires that the material stick to the metal strip, at a minimum, throughout the process of shaping the strip into spacer stock and fixing glass to the spacer, the Court will not limit it further.

### Conclusion

For the foregoing reasons, the Court DENIES Lockformer's motion for summary judgment and GRANTS PPG's motion to dismiss as the '282 and '944 Patents. Also, the Court construes Claim 1 of the '916 Patent as stated herein.

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: AUG 1 5 2001